UNITED STATES *v.* EDWARD H. CORRIGAN (No. 4630) [1]

United States Court of Customs and Patent Appeals, May 9, 1950

---
[1] C. A. D. 434.

*David N. Edelstein,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

*Sharretts & Hillis* (*Edward P. Sharretts* and *Howard C. Carter* of counsel) for appellee.

[Oral argument April 11, 1950, by Mr. Donohue and Mr. Carter]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, rendered pursuant to its decision, one judge dissenting, Abs. 53222, 22 Cust. Ct. 331, granting appellee's petition for the remission of additional duties assessed by the Collector of Customs at the port of Laredo, Texas, for undervaluation, under the provisions of section 489 of the Tariff Act of 1930, 19 U. S. C. 1489, the pertinent part of which reads as follows:

Sec. 489. Additional Duties.

If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. Such additional duty shall apply only to the particular article or articles in each invoice that are so advanced in value upon final appraisement and shall not be imposed upon any article upon which the amount of duty imposed by law on account of the final appraised value does not exceed the amount of duty that would be imposed if the final appraised value did not exceed the entered value, and shall be limited to 75 per centum of the final appraised value of such article or articles. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The merchandise consists of 6,630 one pound packages of dried bananas imported from Mexico. The merchandise was entered by appellee at the request of Charles T. Wilson Company, Inc., which company had purchased the merchandise. It was advanced in value by the appraiser, thus causing an assessment thereon of additional duties by reason of such undervaluation. The petition is for the refund of the additional duties.

There is no dispute as to the merchandise being undervalued when entered.

The record shows that the merchandise was purchased by Mr. Lloyd M. Trafford for Charles T. Wilson Company, Inc., of which company he was vice-president; that Mr. Trafford had been connected with the company since about 1918 and that the company deals in raw materials imported from foreign countries; that he purchased the involved merchandise at the price of 24 cents a pound, c. i. f., New York; that he instructed appellee, who was a customhouse broker with 25 years' experience, to enter the merchandise. There is no testimony that Mr. Trafford at any time told appellee anything relating to the value of the merchandise or that appellee at any time requested of Mr. Trafford any information relating to the value of the merchandise.

Appellee testified that the merchandise was entered under his direction and that he entered the merchandise at the value shown on the consular invoice which was the only information he had relating to the value of the merchandise. He testified that the entry was made in 1944 during the war at a time when the volume of business at the port of Laredo was "three or four times what it had been at any other time"; that he was "tremendously busy" and that he had a "constant turnover in personnel." When asked "Was your personnel well trained, or poorly trained?" he answered, "We took them just as they came. It was a question of whoever we could get to help us out." However, he did not testify regarding any employees helping him in making the subject entry, and he did not testify that his help had anything to do relating to the valuation placed on the merchandise. He further testified that he had no reason to doubt the correctness of the consular invoice; that he did not check the extension of the unit value, that is, the product of the number of pounds times the unit value to arrive at the extended total value; that he had no reason to check it and no reason to suspect it might be in error; that, in fact, it was in error. He then testified, after examining the invoice and the sheet attached thereto, where the various charges which were not included in the unit price are enumerated, that his curiosity was aroused as to whether the item for packages was 865 pesos; that it "was written 865. Then there is an ink zero, and then another small zero. There is a pencil mark that indicates a decimal between the '86' and the balance of the numbers"; that the item listed on the expense as packing was listed by using the Spanish Term "Envases"; that his curiosity was aroused by the item 92300, that "it is confusing as to whether it is 923 pesos, or 92 pesos and 30 cents." The appellee also testified that the item of "236.28" was for commission, but that he did not know whether it was a buying or selling commission, and that if the invoice was before him to make entry at the time of his testimony that he would question the above-mentioned items.

Mr. Ernesto Ibarra testified that he was a broker and that he sold the involved merchandise; that the item for commission was a selling commission and was included in the price to be paid by the buyer.

Appellee was an experienced customhouse broker, and the Charles T. Wilson Company, Inc., was a dealer in raw materials imported from foreign countries. Surely they knew what was required of them when entering imported merchandise into the United States, but even ignorance of the law or lack of knowledge of the true value of the merchandise cannot of itself be accepted as an excuse or reason for the remission of the additional duties. *United States* v. *H. S. Dorf & Co.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392, and cases there cited.

In the case of *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. (Customs) 356, 359, C. A. D. 41, this court said:

It is not a question as to whether the record affirmatively shows that appellant [petitioner] entered the goods in bad faith, but the question is whether or not it has met its burden of proving to the trial court that in making the entries such good faith was exercised as is required by the statute.

The record discloses that appellee, a customhouse broker with 25 years' experience, after receiving the consulate invoice merely filed with appraiser a request for information as to the value of the merchandise; that the appraiser told appellee that he had no information and for appellee "to pursue it and get further information." Where a submission sheet has been returned to an importer with no information, that fact is sufficient to put a customhouse broker on notice so as to require that he seek further information as to value before making entry. *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306.

The record discloses that appellee did not inquire of the seller regarding the value of the merchandise; that he did not inquire of Charles T. Wilson Company, Inc., the purchaser of the merchandise, regarding the value of the merchandise; that the Charles T. Wilson Company, Inc., did not advise appellee anything relating to the value of the merchandise; and that appellee made no other effort to ascertain the value of the merchandise but simply entered the shipment at the value shown on the consulate invoice. Such indifference as to the proper value of the merchandise as disclosed by the record in this case does not meet the requirements of satisfactory proof of good faith which will support appellee's petition for remission under the statute. *National Silk Spinning Co., Inc.* v. *United States*, 28 C. C. P. A. (Customs) 24, 26, C. A. D. 119; *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70.

There was a duty upon the appellee to seek information as to the correctness of his representation as to the value of the merchandise,

and that duty was not performed by appellee. In the case of *R. W. Gresham* v. *United States, supra,* this court said (at p. 111):

It has frequently been pointed out that the entrant of merchandise owes a duty to inform himself as to the correctness of his representations as to the value of his merchandise and that a showing of indifference to its proper value does not meet the requirements of satisfactory proof under the statute.

The trial court was in error in holding that because the evidence did not warrant a finding that the petitioner made entry with intent to defraud, the petition for remission should be granted. The petitioner has the burden to show affirmatively that the entry was made without intent to defraud. Under the rule of the authorities cited, we hold that petitioner failed to meet that burden. The judgment appealed from must be, and is, *reversed.*